The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * *
The Full Commission concludes as matters of law the following which were entered into by the parties in the Pre-Trial Agreement, filed on 19 February 1996, and at the hearing on 19 February 1996 as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant was a duly qualified self-insured with Trigon Administrators as the adjusting agent.
3. An employment relationship existed between the employee and the employer at the relevant times herein.
4. The parties stipulated the following into evidence:
a. I.C. Forms 18, 19, 33, 33R, and 61;
b. I.C. Form 22; and
 c. Twenty-five pages of medical reports of Dr. Richard Marcus.
5. Plaintiff s average weekly wage at the relevant times herein was $423.04, which yields a weekly compensation rate of $282.04.
6. The issues for determination are:
 a. Whether plaintiff sustained a compensable occupational disease to her hand or arm;
 b. Whether plaintiff s condition is causally related to her employment;
 c. Whether plaintiff s job as a welt-sewer of pillows placed her at an increased risk for developing carpal tunnel syndrome as compared to the general public; and
 d. Whether defendant has been prejudiced by plaintiff's late notice, pursuant to G.S. § 97-22.
* * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. Plaintiff began working as a pillow sewer for defendant on 30 September 1992. Plaintiff's duties included sewing seventeen and twenty-inch throw pillows, with and without flanged trim, and sewing some large cushions. The job involved repetitive use of the hands in sewing 200 pillows per nine-hour workday.
2. Plaintiff operated a sewing machine and sewed either three or four sides of the pillow, depending on whether the pillow had a zipper closure. The sewing machine was foot-pedal operated and self-feeding, although plaintiff had to guide the welt through the machine and had to restrain it against the pull of the machine in order to sew a straight line. Most of the pillows had a fabric-covered cord trim, called a welt. Sewing a pillow took four to five minutes to complete.
3. In order to sew welt, plaintiff had to pull on material with her hand to keep it even on the cording, and to keep it from being drawn into the machine too fast. Plaintiff's hands also applied pressure to line up stripes and seams so they will be sewn straight. Plaintiff's duties also required her to use scissors and involved considerable reaching with her the arms.
4. Plaintiff was also responsible for moving stock, obtaining rolls of welt and from the stock room, and putting pillows in buggies.
5. Plaintiffs normal work hours were 7:30 a.m. to 4:30 p.m., with a thirty-minute lunch and two ten-minute breaks.
6. In June of 1994, plaintiff began to experience cramping in her hands and arms. She began putting ace bandages on the arms and reported this to her supervisor Dorothy Maynard.
7. Beginning on 4 September 1994, plaintiff was seen by Dr. McGinnis, a Hickory hand surgeon. The results of a nerve conduction study was normal. Dr. McGinnis did injections and prescribed hand splints. Dr. McGinnis also recommended that plaintiff change her occupation due to the condition of her hands.
8. On 19 September 1994, plaintiff reported to Ms. Maynard that her symptoms had worsened, and she was referred to David Barnes, defendant's Human Resource Director. Mr. Barnes told her that her job did not cause her hand problems, despite what her physician had told her.
9. Dr. McGinnis testified at his deposition on 2 May 1996, that plaintiff's repetitive motion sewing job caused or significantly contributed to the development of her occupational diseases, pronator syndrome, bilateral carpal tunnel syndrome and epicondylitis. Dr. McGinnis also testified at his deposition, that plaintiff's job with defendant placed her at an increased risk of developing or aggravating her occupational diseases than members of the general population.
10. On 21 November 1995, plaintiff began seeing Dr. Anthony DeFranzo. Dr. DeFranzo is board-certified in hand surgery, plastic surgery, micro surgery, and orthopaedic surgery. Dr. DeFranzo testified at his 15 April 1996 deposition that plaintiff had classic bilateral carpal tunnel syndrome and left lateral epicondylitis. Because the conservative treatment plaintiff was undergoing had not alleviated her plaintiff's symptoms, Dr. DeFranzo recommended surgery. On 22 January 1996, a tight carpal tunnel release was performed. Plaintiff's symptoms improved after the surgery, and it was indicated that plaintiff may later have surgery for her left hand as well.
11. Dr. DeFranzo also testified that plaintiff's position with defendant as a pillow sewer caused the development of plaintiff's medical conditions and that her position exposed her to an increased risk of developing her occupational diseases than members of the general population.
12. Plaintiff's employment with defendant as a pillow sewer caused or significantly contributed to the development, or aggravation of her occupational diseases, pronator syndrome, bilateral carpal tunnel syndrome and epicondylitis.
13. Plaintiff's employment with defendant as a pillow sewer exposed her to an increased risk of developing, or aggravating her occupational diseases, pronator syndrome, bilateral carpal tunnel syndrome and epicondylitis.
14. As the result of her occupational diseases, plaintiff was unable to earn wages in her former position with defendant or in any other employment from 22 January 1996 through 1 October 1996.
15. Plaintiff's failure to provide written notice within thirty days was reasonable under the circumstances of this case and defendant was not prejudiced in any way.
16. No treating physician has given plaintiff a rating for any permanent partial disability she may have as the result of her occupational diseases.
* * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's failure to provide written notice to defendant within thirty days was reasonable under the circumstances, and this delay did not prejudice defendant any way. G.S. § 97-22.
2. Plaintiff's employment with defendant cause or significantly contributed to, as well as exposed her to an increased risk of developing the following occupational diseases: pronator syndrome; bilateral carpal tunnel syndrome; and epicondylitis. G.S. §97-53(13).
3. As the result of her occupational diseases, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $282.04 for the period of 22 January 1996 to 1 October 1996. G.S. § 97-29.
4. As the result of her occupational diseases, plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred. G.S. § 97-25; G.S. § 97-25.1.
5. As of the filing date of this Opinion and Award, there is insufficient evidence in the record, from which plaintiff could be awarded compensation for any permanent partial disability she may have sustained as the result of her occupational diseases. G.S. § 97-31.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay to plaintiff, subject to the attorney's fees approved herein, temporary total disability compensation at the rate of $282.04 per week for the period 22 January 1996 to 1 October 1996. This compensation having accrued, shall be paid to plaintiff in a lump sum.
2. Defendant shall pay interest on the compensation awarded above to plaintiff pursuant to the provisions of G.S. § 97-86.2 from 19 February 1996 (the date of the hearing before the Deputy Commissioner) until paid.
3. Defendant shall pay all medical expenses incurred by plaintiff as the result of her occupational diseases when bills for the same have been processed in accordance with the Commission's procedures.
4. Defendant shall pay the costs, including all unpaid fees to the physicians whose depositions were taken during the course of this proceeding.
5. Documentation relating to any permanent partial disability plaintiff may have sustained as the result of her occupational diseases shall be presented to the Full Commission.
 S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER